## THE PRESIDENTE WILSON.

## UNITED STATES v. PHELPS BROS. & CO.
### No. 256.

Circuit Court of Appeals, Second Circuit.
March 14, 1932.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Delbert M. Tibbetts, of New York City, of counsel), for appellant.

George Z. Medalie, U. S. Atty., of New York City (Mary R. Towle, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

The libellant proved to the satisfaction of the judge that the ship had failed to prevent the landing of five of her complement of alien passengers at the place designated by immigration officers. In the view we take it will be unnecessary to consider the evidence by which these facts were established, because we think that on the record before us there was no basis for a libel in the admiralty. The claimant is an Italian corpo-

ration, operating a line of steamers between New York and Italian ports; it "maintained an office in the City of New York, had in said office representatives upon whom process could have been served and was financially responsible." So the judge found, though the evidence scarcely bears out the finding. However, the libellant has not complained, and we are to assume that it states the facts, perhaps as agreed upon. We understand by it that the company was doing such continuous business in New York as to make it "present," in the sense that it was subject to civil process. The Eighth circuit has held generally that a foreign corporation may be brought to trial on a criminal prosecution by proper summons (John Gund Brewing Co. v. U. S., 204 F. 17); and several District Courts have done the same [U. S. v. Standard Oil Co. (D. C.) 154 F. 728; U. S. v. Va. Car. Chem. Co. (C. C.) 163 F. 66; U. S. v. Nat. Malleable & Steel Castings Co. (D. C.) 6 F.(2d) 40]. These decisions were apparently approved in Albrecht v. U. S., 273 U. S. 1, 47 S. Ct. 250, 71 L. Ed. 505. Arguendo we shall not go so far, but will assume no more than that when "present," it may be prosecuted; so far at any rate there is no doubt. In view of the fact that the issue appears not to have been fully litigated, we will, however, allow the libellant a new hearing to meet the issue, if it wishes.

Subdivision (a) of section ten, as amended by Act May 26, 1924, c. 190, § 27 (8 USCA § 146), makes guilty of a misdemeanor, punishable by imprisonment and a fine of between two hundred and a thousand dollars, any "person, owner, master, officer, or agent" who fails to prevent the landing of an alien. It then proceeds: "If in the opinion of the Secretary of Labor, it is impracticable or inconvenient to prosecute" the offender, he "shall be liable to a penalty of $1,000, which shall be a lien upon the vessel * * * and such vessel shall be libeled." In the case at bar the Assistant Commissioner General of Immigration wrote to the Commissioner of Immigration at New York: "It is felt that there is a violation of law and that it is impracticable or inconvenient to prosecute." As is so often the case with us all, we are to suppose that an opinion followed upon this feeling, and we assume that a prima facie case was made out for proceeding by libel. We do not think that the statute put that opinion beyond examination, in spite of the comprehensiveness of the phrase, "impracticable or inconvenient." The option was given to meet those cases when an arrest of the ship was the only convenient way to pursue the offence. A foreign line without any permanent or continuous footing in the United States may be troublesome to reach; its ships come and go, leaving no responsible persons behind; unless they are caught in port their owners may escape altogether, or the authorities must wait their chance till the same master returns, or they happen to catch a guilty agent or officer. These impediments are not to be suffered, and the Secretary must decide how far the delays and doubts make prosecution inconvenient. But his choice does not depend merely upon a preference for a suit in the admiralty as against a criminal information, nor is he permitted to avoid a jury because of greater uncertainties of success. That would give him a choice incompatible with the primary purpose disclosed, that the persons at fault should be prosecuted.

■■ Whether his decision is reviewable at all is another matter. We agree that it is conclusive until challenged; his acts enjoy the usual presumption that he has not exceeded his powers. That does not alone put them beyond judicial inquiry. When Congress intended so much, as for example in section 20 of the Act of 1917 (8 USCA § 156), it used the phrase, "at the option of the Secretary," though Lazzaro v. Weedin, 4 F.(2d) 704 (C. C. A. 9), suggests that there might be a reviewable abuse of even that discretion. The whole judicial review on habeas corpus of the power to exclude (section 17 of the Act of 1917 [8 USCA § 153]) is in the teeth of as peremptory language; that is, that the decision of the boards of special inquiry "shall be final." So too is the power to deport (section 19 of the Act of 1917 [8 USCA § 155]). Indeed under section 19, in the case of those who claim citizenship, the Supreme Court has taken the issue entirely out of the hands of the administrative officers. Ng Fung Ho v. White, 259 U. S. 276, 42 S. Ct. 492, 66 L. Ed. 938. Similarly, orders of the Postmaster General excluding matter from the mails, though "final," are reviewable when they are without any support in the facts. American School of Magnetic Healing v. McAnnulty, 187 U. S. 94, 23 S. Ct. 33, 47 L. Ed. 90.

On the other hand in Oceanic Steam Navigation Co. v. Stranahan, 214 U. S. 321, 29 S. Ct. 671, 53 L. Ed. 1013, the finding of the Secretary, based upon the certificate of his medical examiners that aliens were afflicted with contagious diseases whose existence could have been detected on embarka-

tion, was held to be so absolute that the carrier might be deprived of a hearing. That was under section nine of the Act of 1903 (32 Stat. 1215), which gave the Secretary power to impose the fine himself. The same rule no doubt applies to section six of the Quota Act of 1921, as added by Joint Resolution May 11, 1922, c. 187, 42 Stat. 540. Even so we have several times held that when the facts do not exist on which the power depends, the action is reviewable. Compagnie Francaise v. Elting (C. C. A.) 19 F.(2d) 773; U. S. v. Compagnie Generale Transatlantique (C. C. A.) 26 F.(2d) 195; Compagnie Generale Transatlantique v. U. S. (C. C. A.) 51 F.(2d) 1053; North German Lloyd v. Elting (C. C. A.) 54 F.(2d) 997. But this case does not arise under so stringent an enactment; Congress did not entrust the Secretary with power to impose fines for an escape of aliens; it provided alternative remedies for that offence, each judicial. His power was limited to a choice between these, based upon an objective standard; that choice was a part, so to say, of the procedure itself, and subject for that reason to such review as courts have over other procedural incidents. Even though his decision is irreviewable when the whole sanction is in his hands, we should assume the contrary, when he must resort to the courts.

■ The precise point appears never to have been ruled before, except in The Bremen (D. C.) 18 F.(2d) 960, a decision of the same judge who passed upon the case at bar. The query thrown out in The Nanking, 290 F. 769 (C. C. A. 9), has never been answered by the court which put it, and indicated no opinion at the time. The Coamo, 267 U. S. 220, 45 S. Ct. 237, 69 L. Ed. 582, does not touch it. Thus we are free to decide the case upon principle, as we see it, and we hold that when it affirmatively appears that the owner is equally amenable to prosecution as to suit, there is no basis for choosing the second, and the Secretary's opinion is not controlling. There are good antecedent reasons for so supposing. The duty imposed upon carriers was made absolute by the Act of 1917, and some latitude, in fact afforded by the upper and lower limits of punishment, became more imperative. Two hundred dollars is perhaps a drastic penalty when the carrier has done everything possible to prevent the escape, but it is hardly oppressive; and Congress evidently meant to reserve the higher penalties for cases of neglect or connivance. But in a libel this cushion for the innocent is taken away (The Coamo, 267 U.

S. 220, 45 S. Ct. 237, 69 L. Ed. 582); there is no latitude, and all must suffer alike. There is a plausible reason for this when the offender, though not at fault, keeps beyond reach; let him voluntarily subject himself to the ordinary processes, if he would raise his innocence to soften his punishment. But when he is here and so subject, and since the primary purpose was plainly to temper punishment in proper cases, it defeats the scheme to make the Secretary's choice a fiat, independent of the actual facts. Indeed, it allows him to oust the courts of just that jurisdiction which Congress intended them to have. We should have to find a stronger warrant in the language used than we can see, to exempt him from the scrutiny usual in such cases.

Decree reversed; cause remanded for further proceedings in conformity with the foregoing.