## UNITED STATES v. SILVERTHORNE et al.

### (District Court, W. D. New York. May 3, 1920.)

### No. 2031.

1. **Criminal law ☞280(1)—Pleas in abatement must aver facts.**
   Pleas in abatement must aver the facts relied on, not conclusions of law, nor the evidence of such facts.

2. **Criminal law ☞280(1)—Pleas in abatement must be strictly construed.**
   Since pleas in abatement are in the nature of confession and avoidance of an indictment, because of new matter or matter not of record, they are given strict construction by the courts.

3. **Criminal law ☞278(2)—Sufficiency or competency of grand jury evidence not decided on plea in abatement.**
   Decision whether the evidence before the grand jury was competent or sufficient in its entirety to justify the indictment is not required on a plea in abatement, though, under special circumstances, the court may inquire into the proceedings, where mistake or irregularity is charged.

4. **Criminal law ☞282—Reply to plea in abatement unnecessary as to matters inferable from plea.**
   Where it was fairly inferable from the plea in abatement that the person from whom books and papers exhibited to the grand jury were seized voluntarily testified before the grand jury without objecting to the seizure, a reply alleging such facts is unnecessary, though the plea in abatement charged that the seizure was illegal.

5. **Criminal law ☞278(1)—Plea in abatement reaches only defects not apparent from record.**
   A plea in abatement is the proper remedy for objections to the indictment not apparent on the face thereof, but is not limited to the conduct of the grand jury or the sufficiency and competency of the proofs before it.

6. **Criminal law ☞280(2)—Plea in abatement, stating evidence was secured from unlawful seizure, held sufficient.**
   A plea in abatement, which alleged that the evidence presented to the grand jury was procured by clues and leads furnished by books and papers of defendants, which were unlawfully seized, is sufficient; it being impossible to be more specific and definite as to the nature of the clues.

7. **Criminal law ☞278(2)—Protection at trial from illegally seized evidence does not justify denial of plea.**
   Where an indictment was procured by evidence ascertained from books and papers seized in violation of defendants' constitutional rights, the fact that defendants would be protected at the trial from the evidence illegaly acquired does not justify overruling the plea.

8. **Criminal law ☞278(2)—Plea in abatement, alleging conspiracy to procure indictment, is bad.**
   A plea in abatement, alleging a conspiracy between various officers and attorneys to destroy the business of defendants, where it does not appear that the grand jury knew of the conspiracy, or was prejudiced by the activities of the conspirators, raises a collateral issue, and will not be sustained.

9. **Criminal law ☞280(2)—Plea must show extra person in grand jury room was not attorney conducting proceedings.**
   A plea in abatement because of the presence of a stenographer in the grand jury room during the taking of testimony, without alleging that the stenographer was not appointed an attorney to conduct the proceeding before the grand jury, as authorized by Act June 30, 1906 (Comp. St. § 534), is insufficient.

Asa K. Silverthorne and others were indicted for conspiracy to defraud the United States. On demurrer to plea in abatement to the

indictment. Demurrer sustained as to all grounds of the plea except one.

See, also, 265 Fed. 853.

John W. Ryan, Sp. Asst. Atty. Gen., for the United States.

Penney, Killeen & Nye, of Buffalo, N. Y. (Henry W. Killeen, of Buffalo, N. Y., of counsel), for defendants Asa K. Silverthorne and Silverthorne Lumber Co., Inc.

Dirnberger & Moore, of Buffalo, N. Y. (James O. Moore, of Buffalo, N. Y., of counsel), for defendant Frederick W. Silverthorne.

McIntyre & Wilkie, of Buffalo, N. Y. (Ernest W. McIntyre, of Buffalo, N. Y., of counsel), for defendants Brick and Tobey.

HAZEL, District Judge. The defendants have filed a joint plea in abatement herein, to which the government has demurred on the ground of insufficiency. An epitome of the plea follows:

(1) That there was no competent legal evidence before the grand jury warranting the indictment.

(2) That there was no evidence of conspiracy to commit the offense charged in the indictment.

(3) That the books and papers of one McConkey, which had been illegally seized after an illegal search on February 25, 1919, in violation of the Fourth Amendment of the Constitution of the United States, were introduced in evidence before the grand jury.

(4) That the office of the Silverthorne Lumber Company, Incorporated, and of Asa K. Silverthorne, was unlawfully invaded on February 25, 1919, and books, papers, and documents belonging to such persons were seized and carried away, in violation of the Constitution of the United States; that they were improperly taken to the office of the United States attorney, and copies made thereof, and excerpts taken therefrom; that on March 3, 1919, such books, papers, and documents, illegally seized, were ordered returned by this court to the said defendant company, and the copies, photostatic copies, and excerpts therefrom were impounded with the clerk of this court. It is alleged that there was only a colorable compliance with the orders of the court, and numerous books and papers unlawfully seized were retained and suppressed by the United States attorney, and other federal officials; some were exhibited and delivered to Dan B. Leonard, attorney for the United States Railroad Administration, and to attorneys for different railroad companies, and to William J. Flynn, an investigator for the United States Railroad Administration; that such persons having possession of the books and papers worked over them, and "from sources, clues, and leads" contained therein obtained information upon which to base a charge against the defendants of criminal offenses against the United States, which charge of offenses or accusations, the plea avers, could be negatived by the books, papers, and documents suppressed by the federal officials; that the offenses charged against the defendants were based solely and only upon information obtained from the books, papers, and documents unlawfully seized, and from the copies thereof; and that the indictment herein was procured by information obtained from

such books, papers, and documents unlawfully seized, and from copies thereof.

(5) That such persons confederated together to oppress the defendants Silverthorne Lumber Company, Incorporated, and Silverthornes individually, and to destroy their business, by conducting an unlawful search and seizure, and cause them to be indicted herein, and indicted for other offenses specified in seven separate indictments, and to institute civil actions against them and attach their property. The plea also alleges that, because of the illegal seizure and suppression of the books, papers, and documents, the defendants will be gravely prejudiced at the trial, and may be unable to make a defense to the accusations.

(6) That one Richard Walsh, a stenographer, was present in the grand jury room during the taking of testimony, to the prejudice of the rights of the accused, and the defendants pray judgment whether the indictment should be further prosecuted against them, and for its dismissal.

[1, 2] Pleas in abatement must aver the facts relied upon, and not conclusions of law, nor the evidence of such facts (U. S. v. Cobban [C. C.] 127 Fed. 713), and at all times they are given a strict construction by the courts (Hillman v. U. S., 192 Fed. 264, 112 C. C. A. 522). They are tantamount to a plea of confession and because of the existence of new matter, or matter not of record, seek to avoid the effect of the indictment.

[3] The plea in abatement (first and second), as supplemented, alleges that the evidence before the grand jury did not warrant finding the indictment; but since substantially the same evidence (except as to writing of Silverthorne, Jr., Tobey, or Brick) was deemed sufficient by me on the motion to quash, I adhere to the ruling then made. Ascertainment as to whether the evidence before the grand jury was competent or sufficient in its entirety to justify the indictment is not required on a plea in abatement, although under special circumstances, the court may inquire into the proceedings where mistake or irregularity is charged. U. S. v. Cobban, supra.

[4] On the motion to quash the indictment it was stated, inter alia, in the opinion filed, with reference to the seizure of McConkey's books and papers, that the rights guaranteed "by both the Fourth and Fifth Amendments are expressly for the benefit of the person or individual whose rights have been invaded, and to transfer such rights to a person who may believe himself injured by a violation of the rights of another would give such scope to the Fourth Amendment as was never contemplated." This view, I think, was correct. Counsel for defendants contends that the government should be required to make replication to such plea, since the defendants were not required to anticipate, as the government contends, that McConkey waived the unlawful raid and seizure of his books and papers, and voluntarily testified for the government before the grand jury. But as to matters which are fairly inferable from the facts alleged in the plea no replication is required. U. S. v. Greene (D. C.) 113 Fed. 683. And such is my conclusion.

[5] The fourth plea presents, to my mind, the most important questions involved herein, and requires careful consideration. A plea in abatement, it is true, is the proper remedy for objections to the indictment which are not apparent on the face thereof; but the rule is not limited to the conduct of the grand jury, or the sufficiency and competency of the proofs before it. Indeed, in U. S. v. Wells (D. C.) 163 Fed. 313, it was held that any defect apparent on the face of the indictment, or founded on matter extrinsic of the record, rendering the indictment insufficient, may be the ground for a plea in abatement, and if found for the defendant, will abate the indictment. In 12 Cyc. at page 355, it is said:

"A plea in abatement is a proper mode of raising objection that the indictment was found by an illegal grand jury, or illegally found by a legal grand jury."

See, also, Hillman v. U. S., 192 Fed. 264, 112 C. C. A. 522; U. S. v. Mitchell (C. C.) 136 Fed. 896.

[6] It is true, as contended by Mr. Ryan, that there is no evidence that any of the persons engaged in the unlawful seizure testified before the grand jury, or that any books and documents illegally seized were exhibited to them, or that secondary evidence was used; and there is no definite allegation as to the nature of the clues or leads obtained from the books and papers. But certainly it is positively asserted that the books and documents were worked over by the United States attorney and his assistants, and from sources, clues, and leads information of the business affairs of the defendants was obtained, which enabled them to adduce the evidence before the grand jury. It is manifestly impossible for the defendants to be more specific or definite as to the nature of the clues and leads, but that the illegally seized books and papers were worked over, and information gleaned therefrom upon which the present indictment was found, is an unmistakable assertion of fact. When a phase of this case was before the Supreme Court last January (251 U. S. 385, 40 Sup. Ct. 182, 64 L. Ed. ——), Mr. Justice Holmes, who delivered the opinion of the court, said:

"The government now, while in form repudiating and condemning the illegal seizure, seeks to maintain its right to avail itself of the knowledge obtained by that means which otherwise it would not have had. The proposition could not be presented more nakedly. It is that although of course its seizure was an outrage which the government now regrets, it may study the papers before it returns them, copy them, and then may use the knowledge that it has gained to call upon the owners in a more regular form to produce them; that tne protection of the Constitution covers the physical possession but not any advantages that the government can gain over the object of its pursuit by doing the forbidden act. Weeks v. United States, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177, to be sure, had established that laying the papers directly before the grand jury was unwarranted, but it is taken to mean only that two steps are required instead of one. In our opinion such is not the law. It reduces the Fourth Amendment to a form of words. 232 U. S. 393, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177. The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all. Of course this does not mean that the facts thus obtained become sacred and inaccessible. If knowledge of them is gained from

an independent source they may be proved like any others, but the knowledge gained by the government's own wrong cannot be used by it in the way proposed."

In Flagg v. U. S., 233 Fed. 481, 147 C. C. A. 367, a case of unlawful search and seizure, where secondary evidence was used at the trial after the books unlawfully taken were worked over by the United States attorney, Judge Coxe, writing for the Circuit Court of Appeals for the Second Circuit, said:

"The question then is reduced to this: . Can a party be convicted of a crime upon proof procured from the books and papers which have been taken from him by force and without pretense of legal authority? * * * The return of the defendant's books and papers, after all the information contained therein had been obtained by the prosecuting officers, did not cure the original trespass. The wrong had then been done. The information illegally obtained was in the possession of the United States attorney, whose agents had been working over the papers 'for three long years.'"

This principle, the Supreme Court said, in Silverthorne Lumber Co., Inc., supra, 251 U. S. 385, 40 Sup. Ct. 182, 64 L. Ed. —, was plainly applicable to this case. If, then, the books and papers, after the unlawful seizure, were copied, excerpted, and worked over by the United States attorney or his assistants, and if the information acquired "shall not be used before the court, but that it shall not be used at all," it follows that, if it was the basis for the indictment without sufficient evidence from independent sources, the defendants suffered an injury in a substantial right guaranteed to them by the Fourth Amendment of the Constitution, to wit, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and the indictment in such case may be barred from prosecution and trial.

It is true, as the government contends, that there was evidence showing that the basis for the indictment was procured from independent sources, and not from any wrongful act (as, for instance, the testimony of Woodworth); but this does not negative the allegation that clues from the books and papers, directly or indirectly, enabled the United States attorney to obtain the indictment. Under the circumstances, the rights of the accused, in my opinion, cannot be fairly protected unless the facts are made clear in advance of the trial on the merits, so that evidence thus obtained may be excluded, and the books and papers still in the possession of the United States attorney and those acting under his control be returned. As said in Edelstein v. U. S., 149 Fed. 636, 79 C. C. A. 328, 9 L. R. A. (N. S.) 236:

"The inhibition [of the Fifth Amendment] not only protects one from the disclosure of facts which would tend to prove his guilt, but also from disclosure of facts which might furnish a clue or a link in the chain of evidence by which a criminal offense might be made known."

[7] It was suggested that the rights of the accused may be protected on the trial, as was done in Fitter v. U. S., 258 Fed. 567, 169 C. C. A. 507, where an illegal search and seizure had been made, and the court admonished the witnesses not to testify to anything based on information acquired from the books and papers illegally seized by the government. The method adopted by the court in that

case commends itself to this court as far as it applies. It does not, however, touch the root of defendants' plea, wherein, as pointed out, the source of the offense is claimed to have been unlawfully procured. I think the facts alleged in the fourth plea are sufficiently clear and positive to require replication by the government.

[8] The fifth plea repeats the essentials of the fourth plea, and in addition the existence of a conspiracy between the United States attorney, government agents, and various attorneys to destroy the business of the Silverthorne Lumber Company, Incorporated, to oppress the defendants, and to suppress and retain its books and papers, which might tend to establish a defense. Any asserted conspiracy to destroy business or to bring civil suits is believed would raise a collateral issue. It does not appear that the grand jury had any idea of conspiracy, or that it was in any way prejudiced by the asserted co-operating activities of the persons mentioned in the plea, and the same is overruled.

[9] It is true that the presence in the grand jury room of a person not authorized by law to be there would be ground for quashing the indictment. U. S. v. Heinze (C. C.) 177 Fed. 770. But any inferences arising from this allegation must be against the pleader. U. S. v. Standard Oil Co. (D. C.) 154 Fed. 728. Mr. Walsh's presence in the grand jury room during the taking of testimony does not negative his right to be present, even in the capacity of stenographer, since, under the statute (Act Cong. June 30, 1906, c. 3935), the Attorney General or any officer of the Department of Justice, or an attorney specially appointed, may, in certain circumstances, conduct any kind of legal proceedings, including grand jury proceedings. In view of the statute, it was necessary, I think, to allege affirmatively, in order to raise an issue, that Mr. Walsh was not specifically appointed attorney to conduct the proceeding before the grand jury, or to assist therein.

An order may be entered, in conformity with this opinion, sustaining the demurrer as to pleas 1, 2, 3, 5, and 6, but overruling it as to the fourth.